14-096127

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

———————————————————————————

In Re:                                    Case No.  11-40640 KHS
                                          Chapter 13

Jorge G. Tirado aka Joshua G. Tirado and Hannah L. Levine,

       Debtors

———————————————————————————

### NOTICE OF HEARING AND MOTION
### FOR RELIEF FROM STAY

TO:     The Debtors and other entities specified in Local Rule 9013-3(a).

1.       CitiMortgage, Inc, moves the Court for relief requested below and gives Notice of Hearing.

2.       The Court will hold a Hearing on this motion at 1:30 P.M, on May 29, 2014 in Courtroom No. 8 West, at U.S. Courthouse, 8th Floor, 300 South Fourth St., Minneapolis, MN 55415.

3.       Any response to this motion must be filed and delivered no later than May 23, 2014, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.       This court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing this Chapter 13 case was filed on January 30, 2011.  The case is now pending in this court.

5.       This Motion arises under 11 U.S.C. §362 and Bankruptcy Rule 4001.  This motion is filed under Bankruptcy Rule 9014 and Local Rules 9013-1 - 9019-1(d).  Movant Requests Relief with respect to exempt real property of the Debtors.

6.       On December 21, 2010, Hannah Levine and Jorge Tirsdo, as joint tenants, husband and wife, made, executed and delivered to CitiMortgage, Inc., a Note (hereinafter referred to as the "Note"), in the original principal amount of $408,000.00 bearing interest from the date thereof at the rate of 4.875% per annum until paid, payable in monthly installments of $2,159.17 commencing on February 1, 2011 and on the first day of each and every calendar month thereafter until the principal and interest were fully paid.

7.     On December 21, 2010, to secure the payment of the Note, Hannah Levine and Jorge Tirado, as joint tenants, husband and wife, made, executed, and delivered to Mortgage Electronic Registration Systems, Inc. a Mortgage (hereinafter referred to as the "Mortgage"), mortgaging and conveying certain real estate in Hennepin County, Minnesota, legally described as follows:

> Lot 16, Block 3, " Sunset Gables Second Division," Hennepin County, Minnesota.

which property has an address of:  2915 Inglewood Ave S, St Louis Park, MN 55416.  The Mortgage was filed for record in the office of the Registrar of Titles, County of Hennepin, on May 23, 2011, as Document Number T4859007, and was subsequently assigned to Movant by Assignment of Mortgage.

8.     The Debtors filed a Chapter 13 Plan on January 30, 2011.  The plan was later confirmed by Court Order on April 21, 2011. The confirmed plan provided, among other things, that:

> "5.  **CLAIMS NOT IN DEFAULT -** Payments on the following claims are current and the Debtors will pay the payments that come due after the date the petition was filed directly to the creditors. The creditors will retain liens, if any."

Notwithstanding the foregoing provisions of said plan, the Debtors have not maintained current payments with respect to said Note and Mortgage while this case is pending.  The Debtors are therefore in default under the terms of the confirmed Chapter 13 Plan.

9.     Debtors are in arrearage for monthly payments as shown below. The last payment received from Debtors was applied to the March, 2014 post-petition payment as that was the next payment due.  An additional payment will come due on June 1, 2014 and on the 1st day of each month until the loan is paid in full.  The Debtors have therefore failed to provide movant with adequate protection.  Post-petition arrearages include the following as of May 6, 2014:

| | |
|---|---|
| 2 payments @ $2,844.15 | $5,688.30 |
| Less Credits/Suspense Account | $(137.44) |
| TOTAL | $5,550.86 |

The principal balance due Movant under the terms of the Note is $387,431.42 as of May 6, 2014, and interest accrues at the rate of 4.875% per year.  The amount therefore due and owing on said Note as of May 6, 2014 is as follows:

| | |
|---|---|
| Principal | $387,431.42 |
| Interest good through May 6, 2014 | $3,406.61 |
| Escrow Advance | $549.96 |
| Accumulated Late Charges | $107.95 |
| Property Inspection Fees | $133.00 |
| Servicing Fees | $46.00 |
| Less Credits/Suspense Account | $(137.44) |
| TOTAL | $391,537.50 |

10.    Debtors have represented the value of this property to be $374,300.00 on the schedules which accompanied their petition.  The current tax assessed value of the property is $382,400.00. As such, there is no equity in said property.

11.    By reason of the foregoing, good cause exists to lift the automatic stay imposed by 11 USC Section 362 to allow Movant to pursue its remedies under State Law.

12.    CitiMortgage, Inc., services the loan on the property referenced in this motion for relief. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the Mortgage property, the foreclosure will be conducted in the name of CitiMortgage, Inc. ("Noteholder"), or its successors or assigns.

13.    Noteholder, directly or through an agent, has possession of the promissory Note.  The promissory Note is either made payable to Noteholder, has been duly endorsed, or has been endorsed blank.  Noteholder is the original Mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

14.    CitiMortgage, Inc. will no longer file any additional Payment Change Notification or Post Petition Fee Notification in conjunction with the aforementioned loan case of the entry of the relief order in conjunction with the loan.

15.    **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

Wherefore, CitiMortgage, Inc., moves the court:

1.      For an Order granting Movant relief from the stay of 11 U.S.C. Section 362.

2.      For such other and further relief as the Court finds just and proper.

Dated:  May 8, 2014

Signed /e/ Thomas J. Hainje
Thomas J. Hainje - 390325
Lawrence P. Zielke - 152559
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

IN RE:

           **CASE NO. 11-40640 KHS**

**Jorge G. Tirado aka Joshua G. Tirado**
**and Hannah L. Levine,**

           **CHAPTER 13**

       **DEBTORS.**


AFFIDAVIT SUPPORTING MOTION FOR RELIEF FROM AUTOMATIC STAY


   Before me, the undersigned authority, personally appeared the person identified below, who being by me duly sworn, deposed as follows:

1. My name is __Andre Lloyd, Jr._____. I am of sound mind, lawful age and capable of making this Affidavit. The statements set forth in this Affidavit are true and correct based on my personal knowledge and review of the business records described herein. I am authorized to make this Affidavit on behalf of CitiMortgage, Inc.

2. This Affidavit is submitted in support of the motion seeking relief from the automatic stay (the "Motion") by CitiMortgage, Inc., its Successors and/or Assigns ("Movant"), in the above-captioned case.

3. I am employed by CitiMortgage, Inc. as a Vice President - Document Control. In that capacity, I am familiar with the books of account and have examined all books, records, and documents kept concerning the transaction alleged in the Motion. All of these books, records, and documents are kept in the regular course of business and are made at or near the time of the transaction using information transmitted by persons with personal knowledge of the facts. It is the regular practice to make and keep these books, records and documents. All of these books, records, and documents are managed by employees or agents whose duty it is to keep the books, records, and documents accurately and completely.

4. My responsibilities include, but are not limited to, handling delinquent bankruptcy accounts and ascertaining amounts due and payable.

5. I have personal knowledge of the facts contained in this Affidavit. Specifically, I have reviewed and have personal knowledge of the records related to the loan account associated with the certain property described as 2915 Inglewood Ave S, St Louis Park, MN 55416.

6.   Movant is the current holder of the Mortgage. A true and correct copy of the Mortgage is attached hereto as Exhibit A, and is incorporated herein by reference. The Mortgage was assigned to, transferred to, or acquired by Movant. A true and correct copy of the Assignment of the Mortgage is attached hereto as Exhibit C.

7.   Movant is the current holder of the Note. A true and correct copy of the Note is attached hereto as Exhibit B, and is incorporated herein by reference.

8.   The Note and Mortgage, dated December 21, 2010, executed by Hannah Levine and Jorge Tirado, as joint tenants, husband and wife, recorded on May 23, 2011, as Document Number T4859007, covers real estate located at 2915 Inglewood Ave S, St Louis Park, MN 55416, and legally described as follows, to wit:

Lot 16, Block 3, " Sunset Gables Second Division." Hennepin County, Minnesota.

9.   As of April 24, 2014, there are one or more defaults in paying Debtors post-petition amounts due with respect to the Note.

10.  As of April 24, 2014, the principal balance owed by Debtors to CitiMortgage, Inc., was $388,014.28, plus advances made, attorney fees, costs, other fees and charges, and interest accruing thereon in accordance with the loan documents. As of April 24, 2014, the total amount due and owing to Movant under the terms of the Note and Mortgage was $391,807.08.

11.  The following chart sets forth those post-petition payments due pursuant to the terms of the Note that have been missed by the Debtors as of April 24, 2014:

| Number of Missed Payments | From | To | Principal and Interest | Escrow (if applicable) | Monthly Payment Amount | Total Amounts |
|---|---|---|---|---|---|---|
| 2 | 3/1/2014 | 4/1/2014 | $2,159.17 | $684.98 | $2,844.15 | $5,688.30 |
| Less post-petition partial payments (suspense balance): | | | | ($137.44) | | |

Total: $5,550.86

12.  As of April 24, 2014, the total post-petition arrearage/delinquency is $5,550.86, consisting of (i) the foregoing total of missed post-petition payments in the amount of $5,550.86, plus (ii) the following post-petition fees[1]

---

[1] The total of missed post-petition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, movant will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

| Description | Amount |
|---|---|
| N/A | $0.00 |

13.   Attached hereto as Exhibit D is Local Form 4001-1, detailing the Debtors' complete loan history beginning on the date of default applicable to this Motion and continuing through April 24, 2014.

14.   The current tax-assessed value of the property described above is $382,400.00.  Attached hereto as Exhibit E is a copy of the County Property Tax Records.

I solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing paper are true.


Affiant

Printed name: _Andre Lloyd Jr_
Title: Vice President – Document Control
Date: _5-5-2014_


STATE OF _Kentucky_ )
                                      ) ss.
COUNTY OF _Boone_ )


On this _5th_ day of _May_, 20_14_, before the undersigned Notary Public in and for the state of _Kentucky_, personally appeared _Andre Lloyd, Jr._, Vice President – Document Control, known to me to be the person who executed the Affidavit on behalf of the above-named Movant, and acknowledged to me that he/she executed the same for the purposes therein stated.

_Deborah Pogue_
Notary Public
My commission expires: _9-7-2014_


**DEBORAH POGUE**
Notary Public, Kentucky State at Large
My Commission Expires Sept. 7, 2014
Notary ID# 427370



Doc No **T4859007**

Certified, filed and/or recorded on
5/23/11 2:00 PM
Office of the Registrar of Titles
Hennepin County, Minnesota
Michael H. Cunniff, Registrar of Titles
Jill L. Alverson, County Auditor and Treasurer

Deputy 33                          Pkg ID 712868

**Doc Name: Mortgage**

| | |
|---|---:|
| Document Recording Fee | $46.00 |
| Mortgage Registration Tax (.0023 rate) | $938.40 |
| Conservation Fee | $5.00 |
| Environmental (MRT) Response Fund | $40.80 |
| *Document Total* | $1,030.20 |

Existing Certs                 New Certs

This cover sheet is now a permanent part of the recorded document.

**EXHIBIT**

*A*

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

When recorded mail to:
*LSI –North Recording Division*
*5039 Dudley Blvd*
*McClellan, CA  95652*
*(800) 964-3524*

Title Recording Services, Inc.
79 Western Ave N
St. Paul, MN 55102
HENNEPIN T            LSI NORTH WALK
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖            MTG

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 21, 2010
together with all Riders to this document.

CitiMortgage 3.2.43.07 V3
MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3024  1/01

Page 1 of 15          Initials: 

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

(B) "Borrower" is Hannah Levine and Jorge Tirado, as joint tenants , husband and wife

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is CitiMortgage, Inc.

Lender is a  Corporation
organized and existing under the laws of  New York
Lender's address is  1000 Technology Drive, O' Fallon, MO  63368-2240

(E) "Note" means the promissory note signed by Borrower and dated  December 21, 2010
The Note states that Borrower owes Lender Four Hundred Eight Thousand

                                                                                        Dollars
(U.S. $408,000.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  January 1, 2041

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule ``A'' |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

CitiMortgage 3.2.43.07 V3

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 2 of 15    Initials:              Form 3024  1/01

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County                                  of HENNEPIN                          :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]:

See Attached Legal ✓

                                                          which currently has the address of
                                                                                        [Street]
2915 INGLEWOOD AVE S
St. Louis Park                                    [City] , Minnesota  55416-4113      [Zip Code]
("Property Address"):

                                                          CitiMortgage 3.2.43.07 V3
MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
                            Page 3 of 15        Initials:              Form 3024  1/01

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

CitiMortgage 3.2.43.07 V3

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 5 of 15          Initials _____          Form 3024  1/01

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these Items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's

CitiMortgage 3.2.43.07 V3

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 7 of 15      Initials: _____      Form 3024   1/01

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and

CitiMortgage 3.2.43.07 V3

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 8 of 15          Initials: _____          Form 3024   1/01

Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

CitiMortgage 3.2.43.07 V3

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal

CitiMortgage 3.2.43.07 V3

owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security

CitiMortgage 3.2.43.07 V3

Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CitiMortgage 3.2.43.07 V3

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

25. Interest on Advances. The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                            -Borrower
                                  JORGE TIRADO

                                  _____ (Seal)
                                                                            -Borrower
                                  HANNAH LEVINE
                                  (Sign Original Only)

_____

CitiMortgage 3.2.43.07 V3

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 14 of 15                              Form 3024   1/01

STATE OF MINNESOTA, *Hennepin*                          County ss:

On this *21st* day of *December, 2010* , before me appeared



*Jorge Tirado, Hannah Levine*

to me personally known to be the person(s) described in and who executed the foregoing instrument and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

WILBERT M. WALZ
Notary Public-Minnesota
My Commission Expires Jan 31, 2013

Notary Public
My Commission Expires: *1-31-2013*

This instrument was drafted by:
CitiMortgage, Inc.
1000 Technology Drive
MS 945
O'Fallon, MO 63368-2240
Tax statements for the real property described in this instrument should be sent to:
CitiMortgage, Inc.
P.O. Box 1800
Attn: Tax Dept
Farmington Hills, MI 48334-3357

CitiMortgage 3.2.43.07 V3
MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 15 of 15        Initials:          Form 3024   1/01

## Exhibit A

The following described property:

Lot 16, Block 3, "Sunset Gables Second Division," Hennepin County, Minnesota.

Certificate of Title No.

# NOTE

| December 21, 2010 | St Louis Park | Minnesota |
|---|---|---|
| [Date] | [City] | [State] |

## 2915 INGLEWOOD AVE S, St. Louis Park , MN  55416-4113
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 408,000.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of 4.875%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the        1st        day of each month beginning on        February 1, 2011        . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on January 1, 2041        . I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "Maturity Date."
I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63368-2240
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 2,159.17

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

CitiMortgage 3 2 43 07 V3
Form 3200 1/01
VMP5N (1007).00
Page 1 of 3

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

EXHIBIT
B

 

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Cd-Mortgage 3 2 43 07 V3
Form 3200 1/01
VMP5N (1007) 00
Page 2 of 3



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JORGE TIRADO                     -Borrower

_____ (Seal)
HANNAH LEVINE                    -Borrower

*(Sign Original Only)*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Pay to the order of

without recourse on us CitiMortgage, Inc.

Janet Ligna, Senior Vice President
CitiMortgage, Inc.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

CitiMortgage 3.2.43.07 V3
Form 3200 1/01
VMPSN (1007).00
Page 3 of 3



Doc No T4874759

Certified, filed and/or recorded on
8/1/11 11:00 AM
Office of the Registrar of Titles
Hennepin County, Minnesota
Michael H. Cunniff, Registrar of Titles
Jill L. Alverson, County Auditor and Treasurer

Deputy 1                                    Pkg ID 726515

**Doc Name: Assignment of Mortgage**

Document Recording Fee                        $46.00

*Document Total*                              $46.00

Existing Certs          New Certs

1131842

This cover sheet is now a permanent part of the recorded document.



EXHIBIT
C

1131842

**Record & Return To:**
CT Lien Solutions
100 Wood Hollow Drive, Suite 170
Novato, CA 94945
888-861-8818

**Prepared By:**
CitiMortgage, Inc.
1000 Technology Dr.
O'Fallon, MO 63368
888-861-8818

Deal Name: Internal
MN, Hennepin



## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, Mortgage Electronic Registration Systems, Inc. herein ("Assignor"), does hereby grant, sell, assign, transfer and convey,without recourse unto CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368 herein ("Assignee") that certain MORTGAGE recorded in Hennepin County, MN referenced below;

**Borrower:** HANNAH LEVINE AND JORGE TIRADO, AS JOINT TENANTS, HUSBAND AND WIFE
**Original Lender:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIMORTGAGE, INC. Recorded: 05/23/2011 Instrument: T4859007 in Hennepin ,MN.
**Property:**    2915 INGLEWOOD AVE S, ST LOUIS PARK, MN 55416-4113

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

Page 2
Loan No

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 07/16/2011.

Mortgage Electronic Registration Systems, Inc.



By: _____

Name:    Derek Coleman

Title:    Assistant Secretary

State of Missouri
County of St Charles

On this 07/16/2011 before me, Matthew Schulte, a Notary Public in and for said state, personally appeared Derek Coleman, Assistant Secretary of Mortgage Electronic Registration Systems, Inc., known to me to be the person who executed the within instrument in behalf of said entity and acknowledged to me that he/she executed the same for the purposes therein stated.

Notary Public: Matthew Schulte
My commission expires: 11/11/2013

MATTHEW E. SCHULTE
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: November 11, 2013
Commission Number: 09895173

**Local Form 4001-1**

**Loan History**

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | CHARGES Amount Due Late Fees | Amount Due Other Charge* | Description of Other Charge |
|------|------|------|------|------|------|------|
| | | | | | | |
| 4/1/2014 | | $2,159.17 | $684.98 | | | |
| 5/1/2014 | | $2,159.17 | $684.98 | | | |
| | $137.44 | | | | | Suspense |
| | $137.44 | $4,318.34 | $1,369.96 | $0.00 | $0.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

**Note: Columns (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

Attorneys fees and filing fee for the motion, if allowed under note and/or
mortgage and sought by Movant to resolve motion      $1,026.00

Current Default Amount Claimed in the Motion      $5,550.86

Escrow Balance (amounts held for payment of taxes, insurance, etc.)      -$549.96

Suspense Account Balance (amount of unapplied payments)      $137.44



EXHIBIT

D

### Parcel Data for Taxes Payable 2014

*Click Here for the 2014 State Copy to be used when filing for the 2013 M-1PR State Refund*

🖨 Print  [View map]  [Taxes due]  [Payment options]  [Current year values]  [Prior year taxes]

| | |
|---|---|
| **Property ID:** | 31-029-24-44-0034 |
| **Address:** | 2915   INGLEWOOD AVE S |
| **Municipality:** | ST. LOUIS PARK |
| **School Dist:** | 283 |
| **Watershed:** | 3 |
| **Sewer Dist:** | |
| **Owner Name:** | H LEVINE & J TIRADO |

Construction year: 1954

Approx. Parcel Size: W50X150

**Taxpayer Name & Address:**

HANNAH LEVINE/JORGE TIRADO

2915 INGLEWOOD AVE S

ST. LOUIS PARK MN 55416

### Sale Information

Sales prices are reported as listed on the Certificate of Real Estate Value and are not warranted to represent arms-length transactions.

| | |
|---|---|
| **Sale Date:** | May, 2004 |
| **Sale Price:** | $350,000 |
| **Transaction Type:** | Warranty Deed |

### Tax Parcel Description

The following is the County Auditor's description of this tax parcel. It may not be the legal description on the most recent conveyance document recording ownership. Please refer to the legal description of this property on the public record when preparing legal documents for recording.

| | |
|---|---|
| **Addition Name:** | "SUNSET GABLES SECOND DIVISION," HENNEPIN COUNTY, MINNESOTA |
| **Lot:** | 016 |
| **Block:** | 003 |
| **First Line Metes & Bounds:** | |
| **Full Metes & Bounds:** | Note: To read full tax parcel description, click here. |
| **Abstract or Torrens:** | TORRENS |

### Value and Tax Summary for Taxes Payable 2014
#### Values Established by Assessor as of January 2, 2013

| | |
|---|---|
| **Estimated Market Value:** | $382,400 |
| **Taxable Market Value:** | $379,576 |



EXHIBIT

E

**Total Improvement Amount:**

**Total Net Tax:**                    $6,101.40    Expand for details

**Total Special Assessments:**

**Solid Waste Fee:**

**Total Tax:**                        $6,101.40    Taxes due

---

### Property Information Detail for Taxes Payable 2014
### Values Established by Assessor as of January 2, 2013

**Values:**

| | |
|---|---|
| **Land Market** | $130,000 |
| **Building Market** | $252,400 |
| **Machinery Market** | |
| **Total Market:** | $382,400 |
| **Qualifying Improvements** | |
| **Veterans Exclusion** | |
| **Homestead Market Value Exclusion** | $2,824 |

**Classifications:**

| | |
|---|---|
| **Property Type** | RESIDENTIAL |
| **Homestead Status** | HOMESTEAD |
| **Relative Homestead** | |
| **Agricultural** | |
| **Exempt Status** | |

Hennepin County is providing this information as a public service.
Tax related questions:    taxinfo@hennepin.us

**Hennepin County, Minnesota**

Open government | Privacy | Copyright 2014

http://www16.co.hennepin.mn.us/pins/addrresult.jsp

4/28/2014

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

_____

In Re:                                              Case No. 11-40640 KHS
                                                    Chapter 13

**Jorge G. Tirado aka Joshua G. Tirado and Hannah L. Levine,**

     Debtors

_____

### MEMORANDUM OF LAW

CitiMortgage, Inc, ("Movant"), submits this memorandum of law in support of its motion for relief from the stay in the above-entitled matter.

### PROCEDURAL HISTORY

This Chapter 13 case was filed by the Debtors on January 30, 2011.  The Debtors listed the property in schedule D with a value of $374,300.00.  The Debtors claimed the property exempt pursuant to 11 U.S.C. § 522(d)(1).  The Debtors filed a Chapter 13 Plan on January 30, 2011.  The plan was later confirmed by Court Order on April 21, 2011.

### FACTS

The Debtors, Hannah Levine and Jorge Tirado, as joint tenants, husband and wife, executed a Note and Mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for CitiMortgage, Inc., on or about December 21, 2010, in the amount of $408,000.00.  [Affidavit in Support of Motion for Relief from Stay at ¶¶ 6-8; Ex. B and A].  Said Mortgage was subsequently assigned to CitiMortgage, Inc., by Assignment filed on August 1, 2011 as Document No.  T4874759.  [Affidavit in Support of Motion for Relief from Stay at ¶ 6; Ex. C].

As of May 6, 2014, the Debtors have failed to make the post-petition payments due under

the terms of the Note and Mortgage for the months of April, 2014 through May, 2014. [Affidavit

in Support of Motion for Relief from Stay at ¶¶ 11, 13; Ex. D]. As of May 6, 2014, the total

amount due and owing to Movant under the terms of the Note and Mortgage was $391,537.50.

[Affidavit in Support of Motion for Relief from Stay at ¶ 10]. Accordingly, the Debtors are in

default under the terms of the Mortgage and confirmed plan for failure to make timely payments.

ARGUMENT

I.      Standing to Bring a Motion

Under Section 362 (a) of the Bankruptcy Code, relief from the automatic stay is

authorized "on request of a party in interest and after notice and hearing..." 11 U.S.C. 362 (d). In

essence, under the Bankruptcy Code, the party seeking relief from stay must establish

entitlement to that relief. 11 U.S.C. 362 (d); see In re Hayes, 393 B.R. 259, 266-267 (Bankr. D.

Mass. 2008).

Some courts have recently found that in order to achieve the standing requirement and

demonstrate that the Movant is the "real party in interest", they must provide "evidence tracing

the identity of the various holders and servicers of the Mortgage or deed in trust in question."

see; In re Sheridan, No. 08-20381, 2009 WL 631355 at 4-5 (Bankr. D. Idaho March 12, 2009);

In re Jacobson, No. 08-45120, 2009 WL 567188 at 5-6 (Bankr. W.D. Wash. Mar. 6, 2009);

Hayes, 393 B.R. at 269; In re Parrish, 326 B.R. 708, 720-721(Bankr. N.D. Ohio 2005).

In Minnesota, one of many requirements to entitle a party to foreclose is "that the

Mortgage has been recorded and, if it has been assigned, that all assignments thereof have been

recorded; provided that, if the Mortgage is upon registered land, it shall be sufficient if the

Mortgage and all assignments thereof have been duly registered." Minn. Stat. § 580.02 (3); see

also Casserly v. Morrow, 111 N.W. 654, 655 (Minn. 1907) ("A party claiming to be the assignee of a Mortgage must have a legal assignment thereof, duly recorded, before he can foreclose it by advertisement").

Furthermore, "a Mortgage and the Note which it secures are separate and independent contracts, different in their nature and purpose; as such, the Mortgage may be foreclosed even though an action on the Note is barred." Lundberg v. Northwestern Nat. Bank of Minneapolis, 216 N.W.2d 121, 123 (Minn. 1974); see also Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, No. 06-3103, 2007 WL 2695795 at 4-5 (D. Minn.2007) (when an agency's primary business is foreclosure by advertisement, they are an enforcer of a security interest, not a debt collector).

It would follow that from recent decisions named above, and pursuant to Minnesota foreclosure law; if the moving party can establish a chain of title from the original Mortgagee to the Movant, standing to bring a Motion for Relief from stay is established.

In the present case, the Mortgage was originally given to Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc.  [Affidavit in Support of Motion for Relief from Stay; Ex. A, B].  The Mortgage was then assigned to CitiMortgage, Inc., by written Assignment which was recorded on August 1, 2011 as Document No.  T4874759.  [Affidavit in Support of Motion for Relief from Stay; Ex. C].

Thus, clearly the Movant has standing to proceed with the Motion for Relief from Stay.

II.      Authority to Verify

Foreclosure agents and servicers do not automatically have authority to bring Motions for Relief.  In re Scott, 376 B.R. 285, 290; (Bankr D. Idaho 2007): In re Hwang, 396 B.R. 757, 767 (Bankr. C.D. Cal 2008).  However, foreclosure agents and servicers can be allowed to show the

authority to act for the party that does.  In re Jacobson, No. 08-45120, 2009 WL 567188 at 5-6

(Bankr. W.D. Wash. Mar. 6, 2009).

Local Rule 9013-2 (a) requires the moving party to serve and file an affidavit or

verification of the motion, if facts are at issue.  Subsection (d) further clarifies that "[a]ffidavits

shall be made on personal knowledge, set forth only facts that would be admissible in evidence,

and show affirmatively that the affiant or verifier is competent to testify to the matters stated."

LBR 9013.2 (d).

The affiant in this case is a Vice President - Document Control for the Movant.  The

Affidavit made in support of this Motion sets forth the required facts to show that the affiant has

personal knowledge of the facts of this matter. [Affidavit in Support of Motion for Relief from

Stay at ¶¶ 1-5].

Accordingly, the affiant has the authority to verify this Motion for Relief from Stay.

III.     Grounds for Relief from Stay

Under Section 362 (d)(1) of the Bankruptcy Code, relief from the automatic stay shall be

granted upon request of a creditor "for cause, including the lack of adequate protection of an

interest in property of such creditor."  11 U.S.C. Sec. 362 (d) (1).  As of May 6, 2014, the

Debtors in this case have failed to make the post-petition payments required by the Note and

Mortgage for a period of 2 months.  [Affidavit in Support of Motion for Relief from Stay at ¶¶

11, 13; Ex. D].  Debtors have not otherwise provided Movant with adequate protection of its

interest in the property.  Such circumstances constitute cause, within the meaning of Section 362

(d) (1), justifying relief from the stay.  In re Video East, Inc.,  41 B.R. 176 (Bankr. E. D. Pa.

1984); In Re Frascatore, 33 B.R. 687 (Bankr. E. D. Pa. 1983).

Pursuant to Section 362 (d) (2) of the Bankruptcy Code, relief from the stay is also

appropriate where Debtors have no equity in the subject property and the property is not

necessary to an effective reorganization.  11 U.S.C. Sec. 362 (d) (2).  See, In re Gellert, 55 B.R.

970 (Bankr. D. N. H. 1985).  In the present case, as of May 6, 2014, the unpaid principal balance

of the debt agreement was $387,431.42 and the total amount due and owing to Movant under the

terms of the Note and Mortgage was $391,537.50.  [Affidavit in Support of Motion for Relief

from Stay at ¶ 10].  Debtors have claimed said Mortgaged property as exempt pursuant to 11

U.S.C. § 522(d)(1). [Debtors' Chapter 13 Bankruptcy Petition; Schedule C].  The value of the

property as averred by the Debtors is $374,300.00 [Debtors' Chapter 13 Bankruptcy Petition;

Schedule D].  The current taxed assessed value of the property is $382,400.00.  [Affidavit in

Support of Motion for Relief from Stay at ¶ 14; Ex. E].  As such, there is no equity in said

property.

Further, paragraph 5 of the Debtors' confirmed Chapter 13 Plan states as follows:

"5.  **CLAIMS NOT IN DEFAULT -** Payments on the following claims are current and
the debtor will pay the payments that come due after the date the petition was filed
directly to the creditors. The creditors will retain liens, if any."

Notwithstanding the foregoing provisions of said plan, the Debtors have not maintained current

payments with respect to said Note and Mortgage while this case is pending.  The Debtors are

therefore in default under the terms of the confirmed Chapter 13 Plan.

Accordingly, Movant is entitled to an order for relief from the stay authorizing it to foreclose its Mortgage on the property.

Dated: May 8, 2014      Respectfully submitted,

             **SHAPIRO & ZIELKE, LLP**

             Signed /e/ Thomas J. Hainje
             Thomas J. Hainje - 390325
             Lawrence P. Zielke - 152559
             Shapiro & Zielke, LLP
             Attorneys for Movant
             12550 West Frontage Road
             Suite 200
             Burnsville, MN 55337
             (952) 831-4060

11-40640 KHS

<u>CERTIFICATE OF SERVICE</u>

**STATE OF MINNESOTA**          )
                               ) SS
**COUNTY OF DAKOTA**           )

I, Sara Doudrick, declare under penalty of perjury, say that on May 8, 2014, I mailed via U.S. Mail and CM/ECF emailed copies of the annexed Memorandum of Law, Proposed Order for Relief from Stay, Notice of Hearing and Motion for Relief from Stay and Certificate of Service on the following interested parties at their last known address.


Jorge G. Tirado aka Joshua G. Tirado
Hannah L. Levine
2915 Inglewood Ave S
St Louis Park, MN 55416




                        /e/<u>Sara Doudrick            </u>
                            Sara Doudrick

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

Case No.  11-40640 KHS

Jorge G. Tirado aka Joshua G. Tirado and Hannah L. Levine,

     Debtors

## <u>ORDER FOR RELIEF FROM STAY</u>

     This case is before the court on the motion of CitiMortgage, Inc, seeking relief from the automatic stay.  Based on the motion and the file;

     **IT IS ORDERED:**

     The automatic stay is modified to allow CitiMortgage, Inc, or its successors or assigns, to foreclose the Mortgage on the real property, in accordance with state law, legally described as:

     Lot 16, Block 3, " Sunset Gables Second Division," Hennepin County, Minnesota.

     **NOTWITHSTANDING** Federal Rule of Bankruptcy Procedure 4001 (a)(3), this order is effective immediately.

Dated: _____

_____